IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00921-REB-PAC

ERIN LAHR,

    Plaintiff,

v.

BALL AEROSPACE AND TECHNOLOGIES CORPORATION,
a Delaware corporation,

    Defendant.

## MINUTE ORDER

### ORDER ENTERED BY MAGISTRATE JUDGE PATRICIA A. COAN

IT IS HEREBY **ORDERED** that the Unopposed Motion for Leave to File Amended Complaint [filed August 23, 2006; Doc. No. 31] is **GRANTED** as follows:

The attached Amended Complaint [tendered August 23, 2006; Doc. No. 31-2] shall be filed this date.

Dated: August 28, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00921-REB-PAC

ERIN LAHR,

      Plaintiff,

v.

BALL AEROSPACE AND TECHNOLOGIES CORPORATION, a Delaware corporation,

      Defendant.

## AMENDED COMPLAINT AND JURY DEMAND

      Plaintiff, Erin Lahr, through her counsel, the law firm of Benezra & Culver, L.L.C., for her Amended Complaint and Jury Demand against Ball Aerospace and Technologies Corporation (hereinafter "BATC"), alleges the following:

### I. INTRODUCTION

      1.    Plaintiff, Erin Lahr, has multiple physical impairments, including Crohn's Disease and Demyelinating Disease/Multiple Sclerosis ("MS") and is a "disabled person" under the terms of the Americans with Disabilities Act ("ADA"). In addition, at all times relevant herein, the Defendant perceived that Ms. Lahr was a disabled person under the ADA and under the Federal Rehabilitation Act. Prior to her diagnosis of MS, Ms. Lahr received outstanding performance evaluations from Defendant. After her diagnosis, Ms. Lahr received an unsatisfactory performance evaluation. Ms. Lahr also made multiple requests for accommodation of her disabilities, which were either granted

only in limited part or were ignored. Ms. Lahr was terminated only three weeks after Defendant ignored her last request for a reasonable accommodation.

## II. PARTIES

2.  Plaintiff, Erin Lahr, was a resident of the State of Colorado at the time her claims arose and presently maintains a residence in Louisville, Colorado. Ms. Lahr was employed by Defendant from January 22, 2001, until her unlawful termination on January 14, 2005.

3  Defendant BATC is a corporation incorporated in the state of Delaware which does business in the state of Colorado.

## III. JURISDICTION AND VENUE

4.  Jurisdiction is proper in this judicial district because Plaintiff Lahr alleges violations of her rights under the Americans with Disabilities Act ("ADA"); 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794. This Court also has authority to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to adjudicate state claims arising out of the common nucleus of operative facts that give rise to Ms. Lahr's federal claims.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Ms. Lahr's claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

6.  Plaintiff Lahr has complied with all administrative, jurisdictional and legal prerequisites to the filing of this action. Plaintiff Lahr has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and unlawful retaliation, and has received notice of her right to sue.

## IV. GENERAL ALLEGATIONS

7.     Ms. Lahr was employed by Defendant as an Engineer from January 2001 until her termination in January 2005. Until her diagnosis with MS in 2004, Ms. Lahr received consistently outstanding performance evaluations.

8.     In July 2003, Ms. Lahr was diagnosed with Crohn's Disease. Ms. Lahr informed her functional supervisor, Human Resources Representative Andrea Chavez, and her immediate supervisor, Marda Barthuli, of her diagnosis.

9.     On July 29, 2003, Ms. Lahr took short-term disability leave. Upon her return to work, Ms. Lahr had numerous excused absences, primarily due to doctor appointments, and disability-related sickness while her medications were being adjusted. However, Ms. Lahr made up for missed time by working extra hours in the evenings and on weekends in accordance with Defendant's flex-time policy.

10.    On June 7, 2004, Ms. Lahr was rushed to the hospital by Ms. Barthuli after vomiting, becoming disoriented, dizzy, and developing double vision while at work. Ms. Lahr was diagnosed with MS and informed Ms. Barthuli of the diagnosis. Ms. Lahr was forced to use sick time and flex time on a number of occasions during the summer of 2004 for absences related to doctor appointments, tests, medication side effects, pain and fatigue, which resulted in a somewhat unpredictable work schedule.

11.    During the week of June 19, 2004, Ms. Lahr met with Ms. Barthuli to discuss accommodations she needed at work. Ms. Lahr requested support with work she was doing on CloudSat and writing IDL code. Because her symptoms and fatigue were the worst in the morning, Ms. Lahr requested that she not be required to attend all of the 8:00 a.m. daily CloudSat planning meetings. In response to Ms. Lahr's requests

for reasonable accommodation, the Defendant provided only limited co-worker support to Ms. Lahr. Defendant did not respond to Ms. Lahr's request that she not be required to attend all of the CloudSat planning meetings.

12. Beginning in September 2004, Ms. Lahr worked a minimum of 12-hour shifts seven days per week and was on-call 24 hours per day for nearly one month in support of the CloudSat project.

13. On October 21, 2004, Ms. Lahr received an unsatisfactory performance evaluation by Ms. Chavez and Ms. Barthuli. Most of the criticisms related directly to problems caused by Ms. Lahr's MS-related symptoms in the summer of 2004, including attendance issues and the failure to attend CloudSat Integration and Test ("I&T") coordination meetings.

14. In her formal response to the performance evaluation, Ms. Lahr noted that she had been diagnosed with MS and had been particularly symptomatic during the summer of 2004. Ms. Lahr noted that further flare-ups of her symptoms were possible, and she requested reasonable accommodations, including (1) the possibility of working from home on a flexible basis when her physical symptoms were exacerbated, (2) flexible scheduling including relief from daily 8:00 a.m. meetings, and (3) the ability to rest for brief periods during the work day.

15. Defendant did not directly respond to the request for accommodation. However, on November 3, 2004, Ms Chavez issued a written reprimand to Ms. Lahr, demanding that she attend the daily CloudSat 8:00 a.m. meetings and adhere to a rigid 8:00 a.m. to 5:00 p.m. work schedule. The reprimand also denied Ms. Lahr's request for flex-time and insisted on 24 hours notice before any absences.

16.   On November 3, 2004, Ms. Lahr met with Ms. Chavez and a Human Resources representative to discuss the disciplinary action. During the meeting, Ms. Lahr expressed her concern that the new conditions contained in the written reprimand would exacerbate her illnesses. Ms. Lahr further explained that the symptoms of MS and Crohn's Disease are unpredictable, often sudden in onset, and that she was not always able to comply with the 24-hour notice requirement for doctor appointments or absences. In response, the HR representative and Ms. Chavez informed Ms. Lahr that failure to comply with any of the conditions of the written reprimand would subject Ms. Lahr to additional disciplinary measures, including termination. Defendant then placed Ms. Lahr on short-term disability so that she could "figure out the details of her medical condition" and not have "any additional problems or violate the terms and conditions of her disciplinary action."

17.   Ms. Lahr was off work on short-term disability leave from November 11 through December 14, 2004. Upon her return to work on December 15, 2004, Ms. Lahr submitted a list of specific accommodation requests to Ms. Barthuli and HR Representative Louise Leiding. These requests included a three-day work week, the flexibility to work partial days on those days when she was not working full-time, flex time for doctor appointments as necessary, a flexible start time in the mornings due to recurring physical symptoms that were worse in the morning, and a flexible daytime schedule that allowed brief periods of rest as needed. The request for a three-day work week was intended to accommodate a new injectable medication regime Ms. Lahr began in December to treat her MS. The requested accommodation of a three-day work week was intended to last only a few months. Defendant did not respond to the

accommodation request. However, Plaintiff began working a three-day work week and received no complaint or objection from the Defendant.

18.     On January 7, 2005, Ms. Chavez notified Ms. Lahr that she was being placed on probation immediately.  Ms. Chavez gave Ms. Lahr no reason for the probation and informed Ms. Lahr that Defendant was conducting an investigation into her "non-compliance" with the disciplinary action.

19.     On January 14, 2005, HR Representatives Louise Leiding and Brenda Loccrichio, accompanied by Ms. Chavez, informed Ms. Lahr that she was being terminated immediately.  Ms. Lahr asked for the reason for her termination and notification of the termination in writing.  However, the HR representative refused to provide any information or a written explanation.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Disability Discrimination in Violation of
### the ADA and the Federal Rehabilitation Act

20.     Plaintiff hereby incorporates Paragraphs 1 through 19 as though fully alleged herein.

21.     The ADA, 42 U.S.C. § 12101, et seq., and the Federal Rehabilitation Act, 29 U.S.C. § 794, prohibit employment discrimination based on disability or perceived disability in the terms, conditions, promotion opportunities, salary and benefits, and classification of its employees.

22.     Plaintiff Lahr is disabled in that her impairments, Crohn's Disease and Demyelinating Disease/MS, substantially limit major life activities including, but not limited to, walking, seeing and working.  In addition, at all relevant times herein, after

Ms. Lahr disclosed her illnesses, Defendant perceived that she was disabled and that her impairment substantially limited major life activities, including but not limited to the major life activity of working.

23. Plaintiff Lahr is a qualified person with a disability who was able to perform the essential functions of her job with reasonable accommodation. In addition, Plaintiff Lahr was at all relevant times herein perceived by the Defendant to be a disabled person.

24. Defendant failed to make reasonable accommodation which would have enabled Plaintiff Lahr to perform her existing job, or to transfer her to work which could be done without accommodation.

25. The intentional discriminatory employment practices to which Plaintiff Lahr was subjected include, but are not limited to, the following: (a) discriminating against Ms. Lahr in terms of work conditions; (b) a negative performance evaluation; (c) unwarranted disciplinary action; (d) involuntary leave; (e) failure to respond to accommodation requests or, in the alternative, only granting accommodation requests on a limited basis; and (f) discriminating against Ms. Lahr by terminating her employment.

26. As a proximate result of the Defendant's discriminatory actions, Ms. Lahr has suffered lost wages, emotional distress and compensatory damages and has incurred attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of the ADA and the Federal Rehabilitation Act

27. Plaintiff hereby incorporates Paragraphs 1 through 26 as though fully alleged herein.

7

28.   The ADA, 42 U.S.C. § 12203(a), and the Federal Rehabilitation Act, 29 U.S.C. §§ 791 and 794, prohibit retaliation against employees who oppose violations of disability discrimination under the ADA and the Rehabilitation Act.

29.   Plaintiff engaged in protected activity when, among other things, she protested her 2004 performance evaluation and the November 3, 2004 written reprimand, and when she requested reasonable accommodations on multiple occasions. Defendant retaliated against Ms. Lahr for engaging in protected activity by, among other things, giving Ms. Lahr a negative performance evaluation, threatening disciplinary action, insisting that Plaintiff take short-term disability leave, placing Ms. Lahr on probation and terminating her employment.

30.   Defendant retaliated against Defendant Lahr with malice and/or reckless indifference to Plaintiff Lahr's federally-protected rights.

31.   As a proximate result of the Defendant's retaliatory actions, Ms. Lahr has suffered lost wages, emotional distress and compensatory damages and has incurred attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy

32.   Plaintiff hereby incorporates Paragraphs 1 through 31 as though fully alleged herein.

33.   The ADA, 42 U.S.C. 12101, et seq., the Rehabilitation Act, 29 U.S.C. § 794, et seq., and the Colorado Civil Rights Act, C.R.S. § 24-3-301, et seq., constitute the public policy of the state of Colorado by prohibiting disability discrimination and retaliation against employees who complain about discrimination, request a reasonable accommodation or engage in other forms of protected activity. These statutes also

prohibit discrimination against an individual based on the employer's perception that he or she is disabled.

34.  Defendant's termination of Plaintiff Lahr violated the public policy of Colorado as described above. Defendant's actions were willful, wanton and in reckless disregard of Plaintiff Lahr's rights and feelings.

35.  Plaintiff Lahr has suffered substantial and continuing economic and emotional injuries as a result of her wrongful termination of employment by Defendant.

WHEREFORE, Plaintiff Lahr respectfully requests that this Court enter judgment in her favor and against Defendant and award:

(a)  Injunctive and declaratory relief;

(b)  Damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, and other employment opportunities;

(c)  An order for the Defendant to reinstate Ms. Lahr and her pension without break in service or penalty or, in the alternative, to pay front-pay and benefits, including lost pension, in an appropriate amount;

(d)  Compensatory damages, including for emotional distress, as allowed by law;

(e)  Punitive and exemplary damages as allowed by law;

(f)  Attorney fees and costs as provided for by law; and

(g)  Pre- and post-judgment interest, costs, expert witness fees and such other relief as the Court deems proper.

**PLAINTIFF LAHR DEMANDS A JURY TRIAL ON ALL OF HER CLAIMS**

Respectfully submitted this 23rd day of August, 2006.

**BENEZRA & CULVER, L.L.C.**

**s/ Seth J. Benezra**

Seth J. Benezra, Esq.
John A. Culver, Esq.
141 Union Blvd., #260
Lakewood, CO  80228
(303) 716-0254
sjbenezra@bc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Mark Brian Wiletsky:   mbwiletsky@hollandhart.com

**s/ Nicole L. Nesvig**